UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:16-cv-00066-MOC

| | |
|---|---|
| **AMY SMITH BATZGARCIA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.     Administrative History**

Plaintiff filed an application for a period of disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. A court will "affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (internal quotation marks omitted). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, ___ F.3d ___, No. 14-2255, 2015 WL 9204335, at *3 (4th Cir. Dec. 17, 2015) (citation and internal quotation marks omitted).

A court is not, however, to "reweigh conflicting evidence[] [or] make credibility determinations" in evaluating whether a decision is supported by substantial evidence; rather, "[w]here conflicting evidence allows reasonable minds to differ," a reviewing court will defer to the Commissioner's decision. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). Where it appears that the ALJ has not adequately explained their findings, courts should not engage in an independent review of the facts, but should instead remand to the agency for further investigation or explanation. Radford v. Colvin, 734 F.3d 288, 295 (4th

Cir. 2013). Where an ALJ relies on boilerplate language and does not adequately explain a determination, the decision is "devoid of reasoning," which renders the task of deciding whether the ALJ's decision is supported by substantial evidence impossible. Id. at 295. In sum, it is not appropriate for a court to review the medical record *de novo* to discover facts to support or refute the ALJ's findings. Id. at 296. In this case, the ALJ's determination contains ample reasoning that explains her determination, which is fully consistent with current law and supported by substantial evidence.

IV. **Substantial Evidence**

　A. **Introduction**

After considering the final decision of the Commissioner, the court has read the transcript of plaintiff's administrative hearing and reviewed the extensive exhibits contained in the administrative record in conjunction with its consideration of the cross motions for summary judgment. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The undersigned finds that it is.

　B. **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

　　a.　An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

　　b.　An individual who does not have a "severe impairment" will not be found to be disabled;

> c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
>
> d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;
>
> e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b) - (f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

After determining that plaintiff could not do her past work as a home health aide, pharmacy tech, and clerical worker, the ALJ determined that plaintiff had the RFC to do a number of jobs at the light exertional level that existed in substantial numbers in the regional and national economies. Tr. 21-23. At the time of her application, plaintiff was in her 20s, which is considered to be a "younger" individual.

After evaluating the medical and vocational evidence, the ALJ determined that plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with additional limitations (Tr. 15-16). These additional limitations included restrictions limiting plaintiff to frequent balancing, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; occasional climbing of ropes, ladders, or scaffolds; and she should avoid hazards or unprotected heights (Tr. 16). She was also limited to simple, routine, repetitive tasks, assuming normal work breaks within an eight hour period; with no fast paced production requirements; and only occasional superficial interaction with supervisors, co-workers, and the public (Tr. 16). After

4

employing a Vocational Expert ("VE"), the ALJ determined that plaintiff had the RFC to work as a small parts assembler (DOT 706.684-022), packager (DOT 920.687-018), and inspector (716.687-014). (TR. 22).

### D. Plaintiff's Contentions

Plaintiff contends that the ALJ's determination is inconsistent with law and is not supported by substantial evidence. Specifically, plaintiff points to evidence from her own doctor and other providers, arguing that Dr. Rudisill opined that, among other things, she was not able to lift 10 pounds, she would need to sit or stand at will, she was unable to hold items, and her ability to see, hear, and speak were limited (Tr. 751-753). She also contends that her nurse practitioner, Ms. Larreur, opined that plaintiff was limited to less than sedentary level work, with occasional reaching, handling, fingering, and feeling (Tr. 634-637).

### E. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

1. That the ALJ erred in finding that plaintiff had the RFC to perform a reduced range of light work;
2. That the ALJ erred in finding that plaintiff's impairments do not meet or equal Listings 12.04 and 12.06;
3. That the ALJ erred in failing to afford appropriate weight to the favorable opinion evidence in the record; and
4. That the ALJ erred in giving plaintiff's testimony little weight.

Plaintiff's assignments of error will be discussed *seriatim*.

#### 2. First Assignment of Error: RFC Determination

Plaintiff first contends that the ALJ erred in finding that plaintiff had the RFC to perform a reduced range of light work. The ALJ is solely responsible for determining the RFC of

5

a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

When an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ found that plaintiff had other severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003).[1] In order for an impairment to be severe it must significantly limit a plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1520(c).

Here, plaintiff contends that her testimony as well as the opinions of her physician and pain management provider are indicative of her inability to perform even a reduced range of light work as found by the ALJ. Plaintiff's has made separate assignments of error concerning the ALJ's consideration of her testimony as well as such opinion evidence. For the reasons that are discussed *infra* as to each of those assignments of error, the court also concludes that plaintiff's assignment of error in determining RFC is without merit as the ALJ's RFC determination is fully consistent with current law and supported by substantial evidence which the ALJ cited in her decision and

---

[1] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

which is, in turn, found in the administrative record. Finding no merit to this assignment of error, it is overruled.

### 3. Second Assignment of Error: Error in Applying the Listings

Plaintiff next contends that the ALJ erred in not finding that her impairments met or equaled Listings 12.04 and 12.06. At step three of the sequential evaluation process, plaintiff has the burden of establishing that an impairment, or combination of impairments, meets or equals a listed impairment. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). The ALJ determined that plaintiff did not have a mental impairment that met or equaled the B criteria of listing 12.04 or 12.06; rather, she found that plaintiff had a mild limitation in her activities of daily living; moderate limitation in social functioning; moderate limitation in concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 15-16).

To *meet* a listed impairment, the impairment must satisfy all of the criteria of that listing. 20 C.F.R. §§ 404.1525(c)(3), (d) 416.925(c)(3), (d). To *equal* a listing, the impairment must be "at least equal in severity and duration" to the criteria of a listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a). For a claimant to show that her impairment meets a listing, it must "meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Whether a claimant meets or equals a listing is a decision that is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "[t]here is no strict requirement that the ALJ specifically address each of the listing requirements." Fox v. Colvin, 2014 WL 4987135, at *3 (W.D.N.C. Sept. 8, 2014) (citing Shelton v. Colvin, 2013 WL 3816607, at *3 (W.D.N.C. July 22, 2013)).

Here, plaintiff argues that her mental impairment meets or equals listings 12.04 (which concerns affective disorders) and 12.06 (which concerns anxiety related disorders). Plaintiff relies on her own testimony and the written opinion evidence provided by her physician, Dr. Rudisill. The B criteria for listings 12.04 and 12.06 requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and/or (4) repeated episodes of decompensation, each of extended duration. Plaintiff contends that had the ALJ fully credited that evidence, she would have found that plaintiff has marked restriction in her activities of daily living and marked difficulties in maintaining concentration, persistence, or pace, meeting the "B criteria" of the listings. (Pl.'s Mem. at 15-16).

Again, as will be discussed <u>infra</u>, the court has determined that the ALJ properly found that Dr. Rudisill's opinion was entitled to little weight and that plaintiff's testimony regarding her symptoms was not consistent with the evidence. Thus, it was not error for the ALJ to have concluded that plaintiff's mental impairment did not meet or equal such listings. Further, the ALJ's finding that plaintiff suffered from a mild, not marked, limitation in the activities of daily living is supported by substantial evidence. Specifically, the ALJ explained her determination and extensively cited to the opinions of physicians on which she relied in reaching her conclusions. (Tr. 18-21). Among the doctors cited, the ALJ referenced the opinion of Dr. Cappelletty, who stated that plaintiff had related her daily activities to him, as follows:

> she generally gets up at 6 o'clock in the morning to get her fiancé's things ready for work. She stated that she will then get her daughter ready for school, and will do light household chores. She takes her daughter to school . . . she does light work throughout the day, goes to church on a regular basis, and socializes with her family . . . she goes to bed between 9:30 and 10:00 at night.

8

(Tr. 578). The ALJ also cited the opinion of Dr. Stitt, Tr. 18, who remarked that plaintiff was able to marry and care for two children, a seven year-old and an eighteen month-old. (Tr. 18, 608). Dr. Tiffany, who the ALJ also referenced, Tr. 18, noted that plaintiff could perform the activities of daily living without difficulty. (Tr. 650, 656).

As to the ALJ's conclusion that plaintiff had a moderate, not marked, limitation in concentration, persistence, or pace. Informing that determination, the ALJ noted that the consultative examinations indicated no more than a mild-to-moderate impact on plaintiff's ability to function. (Tr. 18). Dr. Cappelletty found that there were "no problems evident in [plaintiff's] ability to sustain attention to perform simple repetitive tasks, as she was quite attendant to the needs of her children, and was quite able to focus on the questions asked of her when needed." (Tr. 18, 580). Again, Dr. Stitt observed that plaintiff was able to care for two young children despite her allegations of pain. (Tr. 18, 608). Dr. Carraway, who the ALJ also referenced, concluded that plaintiff had a mild to moderate impairment of attention and concentration. (Tr. 18, 601). The ALJ also relied on evidence showing that one time that plaintiff as treated by a mental health provider, it was noted that her attention span and concentration were appropriate. (Tr. 18, 725). While plaintiff cites Dr. Rudisill for three episodes of decompensation each of extended duration, there is no evidence of any such episode in the record.

Finding no merit to this assignment of error, it is overruled.

**3.     Third Assignment of Error: Considering the Opinions of Plaintiff's Medical Providers**

Plaintiff next contends that the ALJ erred in failing to afford appropriate weight to the favorable opinion evidence in the record provided by her medical providers, in particular Dr. Rudisill and Nurse Practitioner Larreur.

9

As to opinions of treating physicians, a treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). It is undisputed that Dr. Rudisill was plaintiff's treating physician. The opinion of a treating physician is, however, only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001).

Where an ALJ gives less than controlling weight to the opinions and conclusions of a treating physician, it is the ALJ duty to explain why she did not fully credit that opinion. It is not the role of the court to go searching through the Administrative Record to find support for the ALJ's determination. In Radford v. Colvin, 734 F.3d 288, 295–296 (4th Cir.2013), the appellate court explained, as follows:

> [a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.

Radford, 734 F.3d at 295 (citations omitted); Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 260 (4th Cir. 1977) (ALJ failed to include an adequate discussion "in what amount[ed] to no more than a bare recital that [the ALJ] considered the evidence."). The Radford court reasoned that it is best to "remand to the agency for additional investigation or explanation" when a court cannot evaluate the record of the basis that underlies the ALJ's ruling. Radford, 734 F.3d at 295 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)); see also Mascio v. Colvin, 780 F.3d 632, 640 (4th Cir. 2015) ("ALJ's lack of explanation requires remand" when the "ALJ explain[ed] how he decided [the evidence] . . . [with a] vague (and circular) boilerplate statement.").

In this case, the ALJ amply explained why she was not fully crediting the opinions of Dr. Rudisill. In what the court can best describe as a frank explanation, the ALJ, after an extensive discussion of other medical opinion evidence of record, see Tr. At 18-20, explained why she did not fully credit Dr. Rudisill, as follows:

> Although Dr. Rudisill is a treating physician, the opinion stands in stark contrast to the relatively mild objective and clinical findings noted in the records. Moreover, it is inconsistent with the history of drug-seeking behavior and Dr. Rudisill[']s indication that no "clinical reason" existed for the alleged amount of pain. There is little, if any, objective evidence of hearing, seeing, or speaking issues. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians. The physicians might provide such a note in order to satisfy their patient[']s requests and avoid unnecessary doctor/patient tension, particularly in this case where the doctor originally recommended a functional capacity evaluation before he would issue an opinion and then, inexplicably, issued an opinion without one. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence or record, as in the current case.

(Tr. 20). In her decision, the ALJ fully explores "the rest of evidence," fully satisfying her

11

obligation under Mascio to explain and point to the evidence which informed her decision to not fully credit Dr. Rudisill. The court finds that the ALJ properly gave little weight to Dr. Rudisill's conclusions as they were not supported by clinical and laboratory diagnostic techniques and were not inconsistent with other substantial evidence as the ALJ fully explained in her determination.

The ALJ also gave little weight to the opinions of Nurse Practitioner Larreur. A Nurse Practitioner is not an acceptable medical source, 20 C.F.R. §§ 404.1502, 416.902, 404.1513(a), 416.913(a), and it cannot be error for the ALJ to give such an opinion little or even no consideration. Under 20 C.F.R. § 404.1513(d), a plaintiff is, however, permitted to submit evidence from "other sources":

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
> (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
> (3) Public and private social welfare agency personnel; and
> (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

Id. In Morgan v. Barnhart, 2005 WL 1870019 (4th Cir. 2005),[2] the Court of Appeals for the Fourth Circuit addressed what consideration an ALJ must give to corroborative lay opinions submitted in

---

[2] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

accordance with Part 404.1513(d). There, the appellate court, while not reaching the issue (making such *dicta*), agreed that an ALJ could not simply discredit such lay evidence in that particular case based on inherent familial bias; instead, the appellate court found that the ALJ, implicitly and properly, discredited such lay opinions as not consistent with the medical record and the functional capacity evaluation. Id., at **7. Thus, an ALJ is to weigh the opinions from sources who are not acceptable medical sources in accordance with the following factors: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. SSR 06-3p. See Pittman, 141 F.Supp.2d at 608.

Here, the ALJ explained that she did not give substantial weight to Nurse Practitioner Larreur's opinion because not only was she not an acceptable medical source, she had only seen plaintiff for a few months, such opinion was inconsistent with the mild objective evidence, clinical findings, and with plaintiff's documented drug seeking behavior in relation to other physicians. (Tr. 20). Finally, the ALJ explained that she gave greater weight to the opinions of consultative state agency physicians, whose opinions were consistent with and supported by references to the medical evidence. (Tr. 21).

Finding no merit to this assignment of error, it is overruled.

**5.    Fourth Assignment of Error: Discrediting Plaintiff's Testimony**

Finally, plaintiff contends that the ALJ erred in giving her testimony little weight. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations--and therefore sometimes make negative determinations-- about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)). The ALJ concluded that plaintiff's testimony concerning her subjective complaints was not credible when viewed in light of the medical records, list of prescription medications, and evidence as to daily activities. In considering an almost identical method of evaluating pain in Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), Honorable K. K. Hall, Circuit Judge, in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

Id., at 927.

In accordance with Mickles, the ALJ properly discredited plaintiff's testimony and then referenced the substantial evidence which informed that decision, all in accordance with Mascio, supports that decision. First, the ALJ explained that the medical evidence was not consistent with plaintiff's allegations. (Tr. 17). For example, while plaintiff testified her medication made her sleepy, disoriented, and affected her memory (Tr. 19, 40), she repeatedly denied medication side effects to her doctors. (Tr. 19). Indeed, the ALJ cited to the portions of the Administrative Record that informed such conclusion, specifically Exhibit 1F-22F. Id. Multiple examples of how plaintiff's testimony was contradicted by the record evidence are found in the ALJ's decision along with very specific discussions of that contradictory evidence and citations to the record. (Tr. 17-19).

The ALJ's conclusion that plaintiff was seeking strong narcotic medications from her doctors merits discussion. As found by the ALJ in her determination, "the record is replete with issues of drug seeking behavior." (Tr. 19). While addiction can certainly be disabling, the ALJ here considered plaintiff's well documented drug seeking behavior in evaluating the credibility of testimony which was unsupported by clinical findings. Drug-seeking behavior is relevant to the consideration of a claimant's subjective claims. Brock v. Colvin, 2014 WL 5328651, at * 11 (W.D.N.C. Oct. 20, 2014). The ALJ discussed the evidence at length and cited to the exhibits which supported her determination. (Tr. 19). Perhaps most telling, Dr. Rudisill, who provided plaintiff with a most favorable evaluation, refused to prescribe pain medication because there was no clinical reason for plaintiff to be in severe pain. (Tr. 771). Further, plaintiff did not have a functional capacity evaluation with physical therapy as recommended by Dr. Rudisill. (Tr. 19, 43). While plaintiff said that she was not aware of such a recommendation, the evaluation was suggested several times (Tr. 19, 43, 776, 781, 784).

The ALJ further found that plaintiff's testimony and reports of pain were not consistent with the overall evidence (Tr. 18) and then explained that the record was replete with issues regarding drug-seeking behavior. Taylor v. Astrue, 2012 WL 909506, at *4 (W.D.N.C. Mar. 16, 2012) (the record tends to establish an inexplicable pattern of chronic "drug-seeking" behavior by Plaintiff, providing more than a legitimate basis for questioning credibility). In discrediting plaintiff's testimony, the ALJ cited to opinions of Dr. Tiffany, a pain manager for plaintiff, who wrote:

> "if [Plaintiff] is willing to lie so obviously over such a trivial issue, I have grave concerns if she is being truthful with us in other areas, I have significant concern that [Plaintiff] is abusing drugs . . . and that Vicodin may well be her drug of choice. Given the significant degree of dishonesty [Ms. Batzgarcia] has displayed today, including lying while maintaining good eye contact to 3 of my staff members

15

regarding how she got here, I am unwilling to continue to treat [Ms. Batzgarcia], so she is terminated.

(Tr. 638, see Tr. 19).

The court finds that the ALJ properly discredited the testimony of plaintiff and fully satisfied her obligation under Mascio of explaining such decision by discussing the other evidence of record at length. Such determination finds support in current law and is supported by substantial evidence in the record which the ALJ outlined in her decision.

Finding no merit to this assignment of error, it is overruled.

### F. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Judgment on the Pleadings will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) The plaintiff's Motion for Judgment on the Pleadings (#9) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (#11) is **GRANTED**; and

(4)     This action is **DISMISSED**.


Signed: November 22, 2016

Max O. Cogburn Jr.
United States District Judge